**Calvin ROWE**

v.

**CHAPMAN TRUCKING, et al.**

Supreme Judicial Court of Maine.

Argued June 16, 1993.

Decided Aug. 12, 1993.

Sheldon J. Tepler (orally), Hardy, Wolf & Downing, P.A., Lewiston, for plaintiff.

Elizabeth P. Eddy (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

The employer, Chapman Trucking, and its insurer, Maine Bonding and Casualty Co., appeal from a decision of the Appellate Division of the Workers' Compensation Commission affirming an award to the employee, Calvin Rowe, of his attorney fees and disbursements pursuant to 39 M.R.S.A. § 110(2) (1989). Because we conclude that the award contravened the plain meaning of section 110(2), we vacate the decision.

On August 10, 1988, the employee sustained a compensable injury that resulted in the loss of his right eye. Pursuant to a memorandum of payment, the employer began paying benefits to the employee for total incapacity. 39 M.R.S.A. § 51–B (1989 & Supp.1992). Five months later, on January 10, 1989, the employer made an offer in writing to the employee to reduce the employee's benefits to a level of 70% incapacity. After the employee rejected the offer, the employer filed a petition for review of incapacity. 39 M.R.S.A. § 100 (1989 & Supp.1992). By an order dated August 17, 1990, the hearing commissioner reduced the employee's benefits to a level commensurate with 69% incapacity. The employee then moved for an award of attorney fees and disbursements under 39 M.R.S.A. § 110(2)(A):

> If an employee prevails in any proceeding involving a controversy under this Act, the commission or commissioner may assess the employer costs of a reasonable attorney's fee ...
>
> (A) For the purposes of this subsection, "prevail" means to obtain or retain more compensation or benefits under the Act than were offered to the employee by the employer in writing before the proceedings were instituted. If no such offer was made, "prevail" means to obtain or retain compensation or benefits under the Act.

The commissioner determined that the employee had prevailed within the meaning of section 110(2)(A), awarded the employee

reasonable attorney fees and disbursements, and the Appellate Division subsequently affirmed the commissioner's order. We granted the employer's petition for appellate review. 39 M.R.S.A. § 103–C (1989).

As we have repeatedly said, "[u]nless a statute expresses a contrary intent, the plain, common and ordinary meaning of statutory language controls the interpretation of the statute." *Keene v. Fairchild Co.*, 593 A.2d 655, 657 (Me.1991). "We need not delve into legislative history or policy considerations to determine the meaning of § 110(2)...." *Marsella v. Bath Iron Works Corp.*, 585 A.2d 802, 803 (Me.1991). "In construing a statute our duty is to give effect to the intent of the legislature as evidenced by the language of the statute. If the meaning of this language is plain, we must interpret the statute to mean exactly what it says." *Concord Gen. Mut. Ins. Co. v. Patrons Oxford Mut. Ins. Co.*, 411 A.2d 1017, 1020 (Me. 1980).

Section 110(2)(A) clearly and unambiguously sets forth when an employee prevails in a workers' compensation commission proceeding. If an employer offers a certain level of benefits and the employee subsequently obtains or retains in any proceeding before the commission more than was offered by the employer, the employee has prevailed within the meaning of the statute. On the other hand, the employee does not prevail if he receives fewer benefits out of the proceeding than were offered by the employer before the proceeding was instituted. The method utilized by the commissioner in the present case to determine whether the employee prevailed, namely, comparing the employee's actual level of incapacity at the time of the employer's written offer, to the terms of the offer itself, to see if the employee's refusal was reasonable, is not set forth in the express and unambiguous language of section 110(2)(A).

Moreover, our conclusion is consistent with the legislative intent of section 110(2). Before section 110(2) was enacted in 1985, an employee's attorney fees were recoverable as long as the employee had "instituted proceedings ... on reasonable grounds or in good faith or that the employer ... had instituted proceedings." *See* § 110(1) (setting forth when attorney fees are recoverable for injuries prior to effective date of section). By restricting the circumstances in which an employee may recover attorney fees to situations where the employee prevails, the legislature, by its 1985 amendment, manifested its intention to limit the award of attorney fees in workers' compensation cases. In the present case, the employee was offered in writing a 70% level of benefits, and the commissioner awarded 69%. Since the employee did not "obtain or retain" out of the proceeding more than the employer's offer, he was not entitled to attorney fees.

Finally, the commissioner's placing on the employer a burden, in employer-filed review cases, to show that the employee's actual level of incapacity at the time of the employer's offer was less than or equal to its offer is unnecessary in light of our conclusion that the employee's actual level of incapacity at the time of the offer is irrelevant in determining whether an employee prevailed within the meaning of section 110(2)(A).

The entry is:

Judgment vacated, and case remanded for further proceedings consistent with the opinion herein.

WATHEN, C.J., and ROBERTS, CLIFFORD and DANA, JJ., concurring.

GLASSMAN, Justice, with whom COLLINS, Justice, joins, dissenting.

Because I believe the Commission correctly interpreted section 110 and that interpretation should be given deference by the court, I must respectfully dissent.

The Workers' Compensation Act embodies a comprehensive scheme to provide compensation to an employee whose work-connected injuries adversely affect the employee's earning capacity and is a complete

substitute for all other private remedies.[1] *Fanion v. McNeal,* 577 A.2d 2, 4 (Me.1990). "The purpose of [the Act] is to provide an effective and expeditious means of compensating injured workers for loss of earning capacity." *Ciccotelli v. KTS Industries,* 415 A.2d 1091, 1092 (Me.1980). When interpreting the Act, the Commission is mandated to employ a neutral construction that "ensure[s] the efficient delivery of compensation to injured workers at a reasonable cost to employers." 39 M.R.S.A. § 94–A(3) (1989). The interpretation of a single provision of the Act cannot take place in isolation. Any specific provision must of necessity be construed within the context of the entire statutory scheme. *Faucher v. City of Auburn,* 465 A.2d 1120, 1124 (Me. 1983). Moreover, statutory construction is not to be undertaken as an isolated grammatical exercise. "Statutes do not live by words alone. They take on vitality only when read in the transforming light of a real life situation, and the question then becomes what the legislature intended or reasonably would intend the words of the statute to mean when addressed to that particular situation." *Lagasse v. Hannaford Bros. Co.,* 497 A.2d 1112, 1117 (Me. 1985).

The provision of the Act at issue was amended in 1985 to limit an employee's recovery of attorney fees to cases where the employee "prevails." 39 M.R.S.A. § 110 (1989). By failing to define the meaning of the term "prevail" as it relates to the time lag between the offer and the petition decision, the Legislature has left it open to interpretation. *State v. Philbrick,*

402 A.2d 59, 62 (Me.1979). Accordingly, we and the Commission, must seek a meaning that is "consistent with the overall statutory context ... reflects the subject matter of the statute, its purpose, the occasion and necessity of the law and the consequences of a particular interpretation." *Id.*

Prior to the amendment, the statute permitted an award of attorney fees in all cases when the employer instituted the proceedings or the employee instituted proceedings on reasonable grounds and in good faith. *See* 39 M.R.S.A. § 110(1) (applicable to claims arising prior to effective date of amendment). The legislative debate on the amendment reveals that, by the amendment, the Legislature intended to limit the employee's receipt of attorney fees to those situations where the employee "wins." Leg.Rec. 1197–98 (1985). There is no indication in either the language of the amendment or the legislative debate that the Legislature intended to depart from the traditional remedial nature of the Act. Accordingly, the language of the statute should be applied in the instant case with a view toward implementing the purposes of the Act.

Here, there was no evidence before the Commission that the employer's offer to the employee was reasonable or warranted at that time. To the contrary, substantial evidence offered by the employee supports its conclusion that the employee was "probably more than 70% incapacitated at the time of the employer's January 20, 1989 offer to reduce the employee to a 70% level

1. Among the differences between civil litigation seeking damages and a proceeding pursuant to the Workers' Compensation Act are: civil litigation anticipates damages to be paid to the plaintiff for pain and suffering induced by an injury from the date of injury through the period of the plaintiff's life expectancy; loss of earnings or potential earnings from the date of injury to the date of expected retirement; any property damage proximately caused by the alleged incident; punitive damages if applicable; and damages for a loss of consortium of a spouse if applicable. In addition, M.R.Civ.P. 68 permits an offer of judgment, and the potential assumption by the offeree of costs incurred subsequent to the offer if the final judgment is not more

favorable than the offer, prior to any adjudication or binding admission of liability on the part of the offeror.

In contrast, the historical purpose of workers' compensation is to pay an employee who has suffered a work-connected injury for the employee's loss of earning capacity only for the period that such loss endures. The employer's liability for the claimed injury is a prerequisite to section 110(2). The Act provides, *inter alia,* a procedure allowing wage replacement, notwithstanding the extent or nature of the employee's residual injuries or continuing pain or suffering flowing from the compensable injury. A spouse has no cognizable claim for loss of consortium flowing from the employee's injury.

of incapacity."[2] By the time of the Commission decree, eighteen months later, the employee's condition had improved only slightly beyond the level of the employer's offer, as reflected in the finding that the employee "is currently 69% partially incapacitated." Rather than accepting a premature reduction in benefits that did not properly reflect his loss of earning capacity, the employee rejected the offer. Absent any showing by the employer that the January 1989 reduction offer was supported by a correlative improvement in the employee's earning capacity, it was not error for the Commission to determine that based on the employee's reasonable response to the employer's inadequate offer, the employee had prevailed. *See LeBlanc v. United Eng. & Constructors Inc.*, 584 A.2d 675, 677 (Me.1991) (deferring to the administrative interpretation of the Act when it falls within the special expertise of the Commission).

If, as here, the language of the statute is fairly susceptible to such construction, the court's interpretation must avoid results that are absurd, inconsistent, unreasonable, or illogical. *Cote v. Georgia–Pacific Corp.*, 596 A.2d 1004, 1005 (Me.1991). To interpret the instant statutory provision to require only a comparison of the employer's offer in January 1989 with the employee's incapacity in August 1990, eighteen months later, in determining eligibility for attorney fees incurred for the employee's representation before the Commission is inconsistent with the Act's purpose to fairly compensate the employee without unreasonable cost to the employer. Such a construction could unfairly penalize either the employee or the employer for the delay inherent in the petition process by awarding or denying fees based on the intervening improvement or deterioration in the employee's condition and could unfairly deprive the employee of the wage benefits due him. I cannot agree that this was the

legislative intent. *See Lagasse*, 497 A.2d at 1119 (requiring a "rational justification for such a hypothetical construct"). In my opinion, the Commission's interpretation of the provision at issue implements the purposes of the Act as mandated by section 94–A(3) and should be given deference by the Court. *See LeBlanc*, 584 A.2d at 677; *Jacobsky v. D'Alfonso & Sons, Inc.*, 358 A.2d 511, 514–15 (Me.1976). Accordingly, I would affirm the decision of the Appellate Division.

---

**2.** After reviewing the record, the commissioner made the following findings of fact: the employee testified before the Commission on February 8, 1990 that he was totally unable to work until April of 1989; medical testimony established that the employee did not reach maximum medical improvement until approximately February 27, 1989 and was not released for return to work until April 24, 1989, subject to restrictions; an attempt by the employee to return to his former position in August of 1989 failed because the employee's vision restriction prevented his safe operation of a truck.